JOURNAL ENTRY and OPINION
{¶ 1} In this consolidated appeal, appellants Nathan and Esther Offenberg appeal the trial court's decision following a remand from this court.[1] The Offenbergs assign nine errors for our review.[2]
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 3} In 1988, the trial court issued an order of divorce for Nathan Offenberg and Pnina Glassman and designated Glassman as the residential parent of the parties' then three minor children Sheri, Lisa, and Rachel, born 1980, 1982, and 1985, respectively. The divorce decree ordered Offenberg to pay Glassman spousal support of $500 per month and child support of $663 per month for each child.
 {¶ 4} Offenberg filed post-decree motions to modify support. By journal entry dated May 9, 1994, the trial court, having found that Offenberg had an annual income of $33,800, reduced his child support obligation to $277.64 per month per child, retroactive to June 27, 1989. The trial court also ordered Offenberg to pay $36,000 toward support arrearages from a deferred compensation plan held by his then employer, Mid-America Steel.
 {¶ 5} On October 21, 1994, Glassman filed a motion to show cause why Offenberg should not be held in contempt for interfering with the distribution of the $36,000 from the deferred compensation plan. In September, October, and December 1995, Glassman filed additional
 {¶ 6} show cause motions seeking attorney fees and sanctions.
 {¶ 7} In October 1995, Offenberg filed another motion to modify child support. On January 2, 1996, Glassman filed an opposing motion and obtained leave to join Offenberg's new wife, Esther Offenberg, as a party. Glassman specifically sought to restrain Esther Offenberg and Ohio Savings Bank from releasing funds held in Esther Offenberg's name. On January 8, 1996, the trial court issued a temporary restraining order on the Ohio Savings Bank account held in the name of Esther Offenberg.
 {¶ 8} Thereafter, the parties filed various motions; Offenberg filed a motion to determine overpayment and to issue credit. Six months later, Glassman filed motions to show cause and for attorney fees. On September 9, 1996 Offenberg filed a motion for a nunc pro tunc judgment entry. On November 29, 1996, Glassman filed motions for sanctions and to exclude evidence.
 {¶ 9} Between 1996 and 1997, the magistrate heard twenty-six days of testimony. On January 6, 1999, the magistrate issued a decision, which the trial court modified in a journal entry dated October 25, 2000. On February 28, 2001, the trial court issued a nunc pro tunc nunc pro tunc entry. After finding that Offenberg's gross income was $322,292.27 in 1995, the trial court increased Offenberg's child support obligation to $1,422.09 per month per child. The trial court also found Offenberg in contempt regarding the $36,000 he was ordered to pay from the Mid-America Steel deferred compensation plan. Finally, the trial court ordered Offenberg to pay $37,500 in attorney fees. Both Offenberg and Glassman appealed from these orders.
 {¶ 10} On appeal, we held that the trial court's judgment that Offenberg's income was $322,292, or 40 percent of the revenue earned by his Subchapter S corporations, was arbitrary; thus, we remanded for a redetermination of Offenberg's self-generated income. We also held that the trial court properly determined that Glassman was entitled to an appropriate amount of attorney fees because Offenberg engaged in discovery misconduct, but the court improperly ignored Glassman's request for costs associated with the litigation she undertook. We further held the trial court erred by not ruling on Glassman's motion for sanctions against Offenberg's new wife, Esther Offenberg, because the evidence showed that Esther Offenberg may have colluded with her husband in concealing his income and diverting it to her. Finally, we held that the trial court did not abuse its discretion by holding Offenberg in contempt of court for attempting to frustrate and prolong discovery.
 {¶ 11} On remand, the trial court found that it was not necessary to conduct a hearing or to receive further testimony or evidence to address the issues raised by this court for purposes of the remand.
 {¶ 12} Based upon deposits made into Offenberg's business account for the years 1995 and 1996, the trial court determined that Offenberg's gross receipts were $901,970 and $1,123,777 respectively. The trial court found that this was the most complete and accurate information available, because Offenberg failed to provide other credible records. The trial court determined that Offenberg's average gross receipts were $1,012,873 per year.
 {¶ 13} The trial court then averaged Offenberg's cost of goods for 1995 and 1996 and found that it equaled 41.2% of gross receipts. The trial court found that the general overhead for 1995 was 15.1% of gross receipts. The trial court had no information about the general overhead for 1996, therefore, it used the 1995 figure of 15.1% for 1996. Based on these deductions, the trial court determined that Offenberg's available net income was $442,626.36.
 {¶ 14} The trial court then found that the amount of child support due pursuant to the basic child support schedule would be $2,072.95 per child. This resulted in an arrearage of $115,578.85 from October 1995 to July 1997.
 {¶ 15} The trial court also found that the total cost attributable to the discovery misconduct of the Offenbergs was $9,615.34. The trial court also found that Offenberg used his new wife as a conduit for his income so that it appeared that he earned far less than he did. The trial court further found that Offenberg failed to present any credible evidence that the funds in the Ohio Savings Bank in Esther Offenberg's name were her separate property.
 {¶ 16} Finally, the trial court ordered the funds in the Ohio Savings Bank released to Glassman. The trial court reasoned that the funds belonged to Nathan Offenberg, but were held in constructive trust by Esther Offenberg.
 {¶ 17} On February 9, 2005, Glassman filed a motion to reduce the child support arrearages to judgment, to award interest on the arrearages, and to award summary judgment on the above issues. On September 23, 2005, the trial granted summary judgment in Glassman's favor.
 Child Support Calculation {¶ 18} For ease of discussion, we address the first and third assigned errors in Appeal Nos. 85838 and 85863 together; the central concern in both errors is Offenberg's contention that the trial court abused its discretion in determining his gross income for child support purposes and in calculating his arrearages.
 {¶ 19} It is well established that a trial court's decision regarding child support obligations falls within the discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion.[3] An abuse of discretion is more than merely an error of judgment; it connotes a decision that is unreasonable, arbitrary, or unconscionable.[4] When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court.[5]
 {¶ 20} Although the standard of review for a trial court's child support determination is abuse of discretion, challenges to factual determinations upon which the child support order is based are reviewed using the "some competent credible evidence" standard.[6] Since a determination of gross income for support purposes is a factual finding, we must review the trial court's decision to determine whether it is supported by competent credible evidence.[7]
 {¶ 21} The present issue is governed by the definitions contained in R.C. 3113.215(A). The statute provides in relevant part:
"(2) `Gross income' means, except as excluded in thisdivision, the total of all earned and unearned income from allsources during a calendar year * * *.
 "(3) `Self-generated income' means gross receipts received bya parent from self-employment, proprietorship of a business,joint ownership of a partnership or closely held corporation, andrents minus ordinary and necessary expenses incurred by theparent in generating the gross receipts. `Self-generated income'includes expense reimbursements or in-kind payments received by aparent from self-employment, the operation of a business, orrents, including, but not limited to, company cars, free housing,reimbursed meals, and other benefits, if the reimbursements aresignificant and reduce personal living expenses.
 "(4) `Ordinary and necessary expenses incurred in generatinggross receipts' means actual cash items expended by the parent orhis business. `Ordinary and necessary expenses incurred ingenerating gross receipts' does not include depreciation expensesand other noncash items that are allowed as deductions on anyfederal tax return of the parent or his business."
 {¶ 22} On remand, the trial court reviewed the corporate records along with the personal and corporate tax returns that Offenberg submitted. The trial court noted that it was not convinced that the tax returns Offenberg presented to the court were those actually filed with the Internal Revenue Service. Notwithstanding, the trial court deemed them unreliable since Offenberg's accountant testified that he prepared them from the check register that Offenberg made available to him. The trial court found that Offenberg never disclosed to his Offenberg never disclosed to his accountant many pertinent records including sales invoices, business commissions, and reimbursable expenses; thus, it was impossible for the accountant to independently assess the validity of Offenberg's income and expenses.
 {¶ 23} When a trial court determines a parent's income for purposes of calculating child support, it must verify the income "with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns."[8]
Although federal and state tax documents provide a proper starting point to calculate a parent's income, they are not the sole factor for the trial court to consider.[9]
 {¶ 24} The trial court expressly noted that it was impossible to conduct a traditional analysis because Offenberg provided documents that were either misleading or false. Consequently, the trial court reviewed the subpoenaed record of the deposits into Offenberg's business account for the years 1995 and 1996. The trial court found that during 1995 and 1996, Offenberg's gross deposits into his business account were $901,970 and $1,123,777 respectively. This respectively. This resulted in total revenues of $2,025,747 for the two-year period or an average of $1,012,873 per year.
 {¶ 25} The trial court then reviewed the subpoenaed records relating to the average cost of goods sold and general overhead over the same time period. The trial court noted that these records were the most credible and reliable evidence presented. As previously noted, the trial court deducted the average cost of goods sold of 41.2% and general overhead of 15.1% from the average gross receipts for the years 1995 and 1996. After the trial court subtracted all reasonable and necessary expenses from the business revenues, the trial court determined that Offenberg's available net income was $442,626.36.
 {¶ 26} The trial court noted that the net income of $442,626.36 was less than Glassman's estimation of Offenberg's income, but was far greater than what Offenberg represented it to be. The trial court used Offenberg's available net income to determine the child support obligation and to arrive at the amount of the arrearages.
 {¶ 27} We conclude there is competent, credible evidence in the record to indicate that the trial court methodically determined Offenberg's child support obligations and the amount of his arrears, despite Offenberg's lack of cooperation and forthrightness. We further conclude that the trial court has set forth in a clear and concise manner its determination of Offenberg's child support obligations and the amount of his arrears. This comports with this court's directives. Accordingly, we overrule Offenberg's first and we overrule Offenberg's first and third assigned errors.
 Release of Funds {¶ 28} We address Offenberg's second assigned error and his wife, Esther Offenberg's sole assigned error together; they both argue that the trial court lacked jurisdiction over Esther Offenberg or Phone SS, Inc. (PSS, Inc.), therefore, releasing the funds in the Ohio Savings Bank account was void ab initio. We disagree.
 {¶ 29} Preliminary, we note that although both parties argue that the funds in the Ohio Savings Bank account belonged to PSS, Inc., which was not named as a party, the trial court expressly found that the funds in the account belonged to Offenberg and not his wife. The trial court's journal entry states in pertinent part as follows:
"While Mrs. Offenberg has continually argued that all thesefunds belong to her, the overwhelming weight of evidence suggestssomething to the contrary. Between 1991 and 1996 Esther Offenbergdeposited more than $458,035.96 into her accounts at Ohio SavingsBank, Metropolitan Savings, Society National Bank and NationalCity Bank. (Pl Ex 130, 230 and 231). The Court further finds thatduring this same time, Esther Offenberg's W-2 income was nevermore than $9,600 in any calendar year. Rana Cosmetics, which canbe considered her actual business enterprise, had deposits ofonly $10,100 in 1996 (Pl Ex 226). The facts clearly show apattern of income production by Mr. Offenberg and income transferto Mrs. Offenberg.
"* * *
"Esther Offenberg signed none of the corporate Tax returnsthat were presented into evidence. In fact, the role of CEO andPresident was often confused. Nathan Offenberg signed asPresident of Phone SS Inc. on the Majestic Steel settlementagreement. He signed as Secretary in 1992 (Pl Ex 37); he signedas CEO on a credit application (Pl Ex 48); he signed as Presidentof PSS in 1996 (Pl Ex 42). If Esther Offenberg were trulyPresident of any corporate enterprise, there would have been someexercise of control and decision making. Esther was simply a toolused by Nathan Offenberg to defer and transfer hisincome."[10]
 {¶ 30} The Offenbergs argue that the trial court had no authority to release the funds absent a motion to invoke the court's jurisdiction. We are not persuaded.
 {¶ 31} A review of the record indicates that in the early part of 1996, the magistrate issued a temporary restraining order on Esther Offenberg's Ohio Savings Bank account containing approximately $44,000, which Glassman had alleged contained PSS, Inc. revenues. The record indicates that Ohio Savings Bank was properly served and subsequently entered an appearance. Thus, jurisdiction was invoked by the motion to enjoin Ohio Savings Bank from disbursing funds from the account.
 {¶ 32} The record also indicates that Esther Offenberg moved to dissolve the restraining order twice during the pendency of the proceedings. Thus, Esther Offenberg waived service of the motion pursuant to Civ.R. 75(I) by defending against the motion on the merits.[11]
 {¶ 33} Here, Esther Offenberg was added as a defendant under Civ.R. 75(B)(1), which authorizes joinder in divorce proceedings of:
"A person or corporation having possession of, control of, orclaiming an interest in property, whether real, personal ormixed, out of which another seeks an award of spousal support orother support * * *."
 {¶ 34} In the prior appeal, we expressly noted the follow:
"The trial court made no finding at all, relative to eitherthe $44,000 in restrained assets in Mrs. Offenberg's Ohio SavingsBank account or, given her demonstrated role in taking checkswritten to one of the PSS entities because of only Offenberg'slabor and depositing them into either corporate or her personalaccounts, relative to her involvement in her husband's efforts tominimize his self-generated income. From the evidence, Mrs.Offenberg improperly, at a minimum, controlled money belonging toPSS which otherwise should have been available for Offenberg'sobligations to his children."[12]
 {¶ 35} As noted above, on remand from this court, the trial court specifically found that the funds in the Ohio Savings Bank account belonged to Offenberg, not to his wife Esther. By making this finding, the trial court was responding to our directives. Consequently, the proper disposition of the funds was to release it to satisfy the child support obligations of Nathan Offenberg. The trial trial court's judgment is not void ab initio.
Accordingly, we overrule Offenberg's third assigned error and his wife's sole assigned error.
 Cost and Expenses {¶ 36} In the fourth assigned error, Offenberg argues the trial court abused its discretion in awarding Glassman cost and expenses. We disagree.
 {¶ 37} The trial court's journal entry reads in pertinent part as follows:
"The Court further finds that the plaintiff's costsattributable to the discovery misconduct of both Nathan andEsther Offenberg were $9615.34 (Pl Ex 201). These includedexpenses for accounting and filing fees, copy charges, businessand bank records, subpoenas, process servers, and depositions.This Court has never witnessed a case where the discovery processhas been abused to such an extent. The Defendant was recalcitrantthroughout the proceedings. But for Plaintiff's extraordinaryefforts to obtain information, the extent of Defendant's incomewould never have been revealed."[13]
 {¶ 38} Civ.R. 37(B)(2) provides various sanctions for failure to comply with discovery, which includes the imposition of expenses for costs incurred in obtaining the required discovery.[14]
 {¶ 39} Here, Offenberg had complete control of his personal and business records and was able to respond to any discovery requests relative to his income and legitimate expenses. Had Offenberg turned turned over the discovery requests, the issue of gross income could have been determined promptly and inexpensively. Instead, the record indicates that Offenberg purposely evaded discovery and refused to produce documentation of income, banking, and business expense data.
 {¶ 40} Consequently, Glassman expended substantial time, energy and money to obtain the requested discovery. Glassman submitted a detailed account of her costs and expenses, which the trial court reviewed. The record reveals the award was supported by the record. Accordingly, we overrule the fourth assigned error.
 Additional Hearing {¶ 41} In the fifth assigned error, Offenberg argues the trial court erred in not conducting a hearing despite the trial court's unreasonably long delay in resolving the issues on remand from this court. We disagree.
 {¶ 42} The record is devoid of any indication that Offenberg requested an evidentiary hearing following this court's remand. The record indicates that the trial court heard twenty-six days of testimony in the matter. The record further indicates that the trial court's findings are supported by reference to some testimony or exhibit presented as evidence by the parties.
 {¶ 43} Finally, the record reveals that the trial court did a complete and methodical review of the evidence that was before it. The trial court's findings are supported in the record. An additional additional evidentiary hearing was not necessary. Accordingly, we overrule the fifth assigned error.
 Child Support Guidelines {¶ 44} In the sixth assigned error, Offenberg argues the trial court erred in failing to use the revised version of R.C.3119.01, which became effective in March 2001, to calculate his child support obligations. We disagree.
 {¶ 45} The record indicates that the motions to modify child support were filed in 1995 and 1996 respectively. For practical purposes, the trial court needed to use the support guidelines applicable to those years. The trial court properly applied the statute that was in effect at the time the motions were filed. Accordingly, we overrule the sixth assigned error.
 Summary Judgment {¶ 46} In the first and second assigned errors in Appeal No. 87175, Offenberg argues the trial court erred in granting summary judgment to Glassman; he argues a genuine issue of fact exists concerning the trial court's determination of his gross income. He also argues and that the trial court's factual analysis is flawed as to the determination of his gross income, and, the trial court failed to conduct an evidentiary hearing. Given our disposition of the first, third and fifth assigned errors in Appeal Nos. 85838 and 85863, these 85863, these assigned errors are moot and need not be addressed.[15]
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Domestic Relations Division of Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Rocco, P.J., concurs; Corrigan, J., concurs in judgment only
 APPENDIX Appeal Nos. 85838 and 85863
 Nathan Offenberg's Assigned Errors
 "I. The trial court erred as a matter of law and abused itsdiscretion in the determination of the parties' gross incomes forpurposes of calculating child support."
 "II. The trial court's judgment entry releasing funds held inOhio Savings account is void ab initio."
"III. The trial court's determination of arrears isunsupported by the evidence and is an abuse of discretion."
 "IV. The trial court abused its discretion in awarding theappellee Pnina Glassman the sum of $9615.34 for costs andexpenses."
 "V. The Trial court erred in not conducting a hearing despitean unreasonable delay on the issue of remand from the EighthDistrict Court of Appeals."
 "VI. The trial court erred in not making a determination ofchild support on a case by case basis pursuant to the childsupport guidelines."
 Esther Offenberg's assigned error.
 "I. The trial court's judgment releasing funds held in an OhioSavings account in the name of Esther Offenberg is void abinitio."
Appeal No. 87175
 "I. The trial court erred in granting summary judgment to theappellee, as genuine issues of material fact remain concerningthe determination of appellants gross income."
 "II. The trial court's factual analysis is flawed as thedetermination of appellant's gross income is flawed. The trialcourt erred by failing to conduct an evidentiary hearing."
[1] Offenberg v. Offenberg (Jan. 23, 2003), Cuyahoga App. Nos. 78885, 78886, 79425, 79426, 2003-Ohio-269.
[2] See Appendix.
[3] Pauly v. Pauly (1997), 80 Ohio St.3d 386, 390, 1997-Ohio-105, citing Booth v. Booth (1989), 44 Ohio St.3d 142,144.
[4] Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
[5] Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
[6] Jajola v. Jajola, Cuyahoga App. No. 83141, 2004-Ohio-370, citing Bender v. Bender (Jul. 18, 2001), 9th Dist. No. 20157.
[7] Fallang v. Fallang (1996), 109 Ohio App.3d 543.
[8] R.C. 3119.05.
[9] Foster v. Foster (2002), 150 Ohio App.3d 298,2002-Ohio-6390; Houts v. Houts (1995), 99 Ohio App.3d 701,706.
[10] Journal Entry March 26, 2005.
[11] Garnett v. Garnett (Aug. 7, 1986), Cuyahoga App. No. 50857.
[12] Offenburg, supra.
[13] Journal Entry March 26, 2005.
[14] Civ.R. 37(B)(2)(c).
[15] App.R. 12(A)(1)(c).