MARY J. BOYLE, P.J.:
{¶ 1} Defendant-appellant, N.S. ("mother"), appeals the trial court's child support order concerning her daughter, M.C.M. (d.o.b. March 22, 2014). On appeal, mother raises three assignments of error:
1. The trial court committed reversible error when it failed to conduct an independent review of the Magistrate's Decision.
2. The trial court erred and abused its discretion in its determination of the annual income levels of the parties.
3. The trial court erred and abused its discretion in its determination of child support the father is to pay to the mother for the minor child.
{¶ 2} Finding merit to mother's second and third assignments of error, we reverse and remand.
Procedural History
{¶ 3} Mother and plaintiff-appellee, B.M. ("father"), were never married. They lived together from the time of M.C.M.'s birth until they separated on February 1, 2016. Father established paternity through an acknowledgment of paternity and mutual agreement.
{¶ 4} In June 2016, mother filed a complaint in juvenile court objecting to an administrative child support order issued by the Cuyahoga County Jobs and Family Services Office of Child Support Services (CJFS-OCSS). In her complaint, she argued that CJFS-OCSS did not properly determine father's income.
{¶ 5} In March 2017, mother filed a motion for retroactive support in the juvenile court, requesting that the effective date of any child support order be February 1, 2016, the date that father and mother separated. The matter went before the juvenile court magistrate, and father and mother both testified as to their respective financial situations. In addition, both parties submitted a number of exhibits demonstrating their income for the previous *697 few years, including tax returns, W-2 forms, and employment records.
{¶ 6} The magistrate found that mother was "compensated well beyond her visible $10,500.00 annual taxable salary" and, thus, voluntarily underemployed. The magistrate imputed a gross income of $30,000 to mother. As for father, the magistrate averaged his annual income from 2014 through 2016, concluding that he had an average income of $62,523. Based on those determinations, the magistrate ordered that father pay monthly child support in the amount of $594.75 plus a two percent fee when health insurance is provided and $558.45 when health insurance is not provided.
{¶ 7} Both mother and father filed timely objections to the magistrate's decision, particularly contesting the magistrate's income determinations. In addition, after obtaining leave to do so, mother supplemented her objections upon completion of the trial transcript, again arguing that the magistrate's income determinations were improper.
{¶ 8} After review of the magistrate's decision, the trial judge issued two judgment entries adopting the magistrate's order for child support. The first entry overruled mother's supplemental objections, which were identical to those she initially raised. The second entry overruled father's objections.
{¶ 9} It is from this judgment that mother now appeals.
Law and Analysis
A. Independent Review
{¶ 10} In her first assignment of error, mother argues that the juvenile court failed to independently review the magistrate's child support decision and order.
{¶ 11} "In reviewing a magistrate's decision, a trial court does not sit in the same manner as an appellate court; rather, it must conduct an independent review of the facts and conclusions made by the magistrate." Haupt v. Haupt , 11th Dist. Geauga No. 2015-G-0049, 2017-Ohio-2719, 2017 WL 1862189, ¶ 26, citing Phillips v. Phillips , 2014-Ohio-5439, 25 N.E.3d 371 (5th Dist). Juv.R. 40(D)(4)(d) provides that "the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence[.]" The trial court must decide " 'whether the magistrate has properly determined the factual issues and appropriately applied the law, and, where the magistrate has failed to do so, the trial court must substitute its judgment for that of the magistrate.' " In re J.M.G., 8th Dist. Cuyahoga No. 98990, 2013-Ohio-2693, 2013 WL 3327565, ¶ 22, quoting Gobel v. Rivers , 8th Dist. Cuyahoga No. 94148, 2010-Ohio-4493, 2010 WL 3722546. "An appellate court reviews a decision of a trial court adopting a magistrate's decision under an abuse-of-discretion standard." In re Estate of Haas , 10th Dist. Franklin No. 07AP-512, 2007-Ohio-7011, 2007 WL 4534528, ¶ 14. Further, "a trial court's ruling on objections to a magistrate's decision will not be reversed absent an abuse of discretion." Gobel at ¶ 16, citing Remner v. Peshek , 7th Dist. Mahoning No. 97-C.A.-98, 1999 WL 803441 (Sept. 30, 1999).
{¶ 12} We presume that the trial court independently reviewed the magistrate's decision "unless the party asserting the error affirmatively shows otherwise." In re J.M.G. at ¶ 23, citing Hartt v. Munobe , 67 Ohio St.3d 3, 615 N.E.2d 617 (1993). The party asserting that the court did not independently review a magistrate's *698 decision has the burden of affirmatively rebutting that presumption. Redmond v. Wade , 4th Dist. Lawrence No. 16CA16, 2017-Ohio-2877, 2017 WL 2257731, ¶ 23, citing Mahlerwein v. Mahlerwein , 160 Ohio App.3d 564, 2005-Ohio-1835, 828 N.E.2d 153 (4th Dist.).
The "affirmative showing" required to rebut our general presumption requires "more than a mere inference"; it requires appellant to provide the reviewing court with specific facts demonstrating that the trial court failed to conduct an independent review of the magistrate's findings.
Id. at ¶ 25, quoting In re Taylor G. , 6th Dist. Lucas No. L-05-1197, 2006-Ohio-1992, 2006 WL 1047474.
{¶ 13} In support of her allegation that the juvenile court failed to independently review the magistrate's decision, mother argues that the court's journal entry is a verbatim copy of the magistrate's decision, specifically pointing to the fact that the juvenile court's decision included a hearing date that already passed.
{¶ 14} While the juvenile court's judgment entries did include a clerical error concerning a past hearing date, "the cutting and pasting of a magistrate's decision into a judgment entry does not show mere rubber-stamping." Marafiote v. Estate of Marafiote , 2016-Ohio-4809, 68 N.E.3d 238, ¶ 32, citing Ramos v. Khawli , 181 Ohio App.3d 176, 2009-Ohio-798, 908 N.E.2d 495 (7th Dist.). Therefore, without additional rebutting evidence and constrained by the presumption of independent review, we find that the inferences that mother makes from the inclusion of an old hearing date are insufficient to rebut the presumption of independent review.
{¶ 15} Accordingly, we overrule mother's first assignment of error.
B. Gross-Income Determinations
{¶ 16} In her second and third assignments of error, mother argues that the trial court abused its discretion when determining the gross incomes for both parties.
{¶ 17} We will not reverse a juvenile court's child support order absent an abuse of discretion, which occurs when that order is unreasonable, arbitrary, or unconscionable. In re K.R.B. , 2017-Ohio-7071, 95 N.E.3d 799, ¶ 16, citing Booth v. Booth , 44 Ohio St.3d 142, 541 N.E.2d 1028 (1989), and Blakemore v. Blakemore , 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). An abuse of discretion also occurs when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact" or when it is unsupported by competent, credible evidence. Thomas v. Cleveland , 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.) ; Glassman v. Offenberg , 8th Dist. Cuyahoga Nos. 85838, 85863, and 87175, 2006-Ohio-3837, 2006 WL 2096587, ¶ 27.
{¶ 18} To calculate child support, a juvenile court must determine each parent's gross income and consider the definitions contained in R.C. 3119.01, which provides in relevant part:
(7) "Gross income" means, except as excluded in division (C)(7) of this section, the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses to the extent described in division (D) of section 3119.05 of the Revised Code ; commissions; royalties; tips; rents; dividends; severance pay; pensions; interest; trust income; annuities; social security benefits, including retirement, disability, and survivor benefits that are not means-tested; * * * self-generated income;
*699 and potential cash flow from any source.
"Gross income" does not include any of the following: * * *
(e) Nonrecurring or unsustainable income or cash flow items; * * *
(8) "Nonrecurring or unsustainable income or cash flow item" means an income or cash flow item the parent receives in any year or for any number of years not to exceed three years that the parent does not expect to continue to receive on a regular basis. "Nonrecurring or unsustainable income or cash flow item" does not include a lottery prize award that is not paid in a lump sum or any other item of income or cash flow that the parent receives or expects to receive for each year for a period of more than three years or that the parent receives and invests or otherwise uses to produce income or cash flow for a period of more than three years. * * *
(13) "Self-generated income" means gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts. "Self-generated income" includes expense reimbursements or in-kind payments received by a parent from self-employment, the operation of a business, or rents, including company cars, free housing, reimbursed meals, and other benefits, if the reimbursements are significant and reduce personal living expenses.
{¶ 19} Further, the incomes for both parents must be verified by documentation, which can include pay stubs and tax returns. R.C. 3119.05(A). " '[F]ailure to obtain the necessary financial information renders the court's order arbitrary and therefore an abuse of discretion.' " Basham v. Basham , 3d Dist. Allen No. 1-02-37, 2002-Ohio-4694, 2002 WL 31007154, ¶ 6, quoting Aiello v. Aiello , 3d Dist. Seneca No. 13-96-12, 1996 WL 517351 (Sept. 1, 1996).
{¶ 20} To ensure meaningful appellate review, the juvenile court must follow and complete the child support guidelines and applicable worksheet. R.C. 3119.022 ; C.S.E.A. v. Harrison , 8th Dist. Cuyahoga No. 87725, 2007-Ohio-402, 2007 WL 274334, ¶ 9. Additionally, the court must attach the child support worksheet to its journal entry, which the court properly did in this case. Id. at ¶ 10. The amount of child support calculated using the relevant guidelines and worksheet is rebuttably presumed to be correct. R.C. 3119.03.
1. Calculation of Mother's Gross Income
{¶ 21} First, mother argues that the trial court incorrectly calculated her income by finding that she was voluntarily underemployed and imputing additional income to her.
{¶ 22} Imputing additional gross income to a parent requires the court to complete a two-part test. Lord v. Lord , 8th Dist. Cuyahoga No. 89395, 2008-Ohio-230, 2008 WL 192547, ¶ 37. First, the court must determine whether the parent is voluntarily underemployed, which is a question of fact for the juvenile court. Id. ; Rock v. Cabral , 67 Ohio St.3d 108, 112, 616 N.E.2d 218 (1993). "[F]or a parent who is * * * underemployed, the trial court may consider any potential income of that parent, including imputed income that the court determines the parent would have earned if fully employed." Wolf-Sabatino v. Sabatino , 10th Dist. Franklin No. 12AP-1042, 2014-Ohio-1252, 2014 WL 1347737, ¶ 23.
{¶ 23} Second, if the court finds that the parent is voluntarily unemployed or underemployed, *700 that parent's income is "the sum of the gross income of the parent and any potential income of the parent." R.C. 3119.01(A)(5)(b). To determine "potential income," the juvenile court must analyze the statutory factors set forth in R.C. 3119.01(C)(11)(a). Lord at ¶ 37. The factors are:
(i) The parent's prior employment experience;
(ii) The parent's education;
(iii) The parent's physical and mental disabilities, if any;
(iv) The availability of employment in the geographic area in which the parent resides;
(v) The prevailing wage and salary levels in the geographic area in which the parent resides;
(vi) The parent's special skills and training;
(vii) Whether there is evidence that the parent has the ability to earn the imputed income;
(viii) The age and special needs of the child for whom child support is being calculated under this section;
(ix) The parent's increased earning capacity because of experience;
(x) The parent's decreased earning capacity because of a felony conviction;
(xi) Any other relevant factor.
R.C. 3119.01(C)(11)(a).
{¶ 24} At the hearing, mother testified that she takes care of M.C.M. during the day and that she works for her family's corporation performing secretarial and marketing work. The parties produced a number of exhibits, including mother's tax returns showing her taxable income from her secretarial work-which was approximately $10,500 in 2015 and $10,400 in 2016-and mother's lease agreement, which was to run from February 2016 through May 2017 and required her to pay $1,307 in rent. She also testified, however, that she broke that lease agreement in November 2016 after her father paid a penalty cost and currently lives in her parents' house, paying $400 in rent every month.
{¶ 25} Further, mother testified that she had the following monthly expenses: $270 for her car, $100 for car insurance, and approximately $100 in utility bills as well as a couple hundred dollars in expenditures for gas, groceries, and personal items every month. Mother testified that she was on the family corporation's cell phone plan. Mother acknowledged that her secretarial salary was not enough to cover all of her monthly expenses. She testified that her father assists her financially.
{¶ 26} As to the first part of the test, the court found that mother was voluntarily underemployed. Specifically, the court stated,
The Court further finds that the evidence presented at this hearing regarding work history as a secretary with marketing experience, educational background of a high school diploma and 3 years college and no disabilities, the mother is voluntarily underemployed[.]
{¶ 27} As to the second part of the test, the court stated that if mother was "fully employed with compensation without the current assistance of her family and as a shareholder of the family's company, [she] would be reasonably earning at least $30,000.00 per year on her own." The court, believing that mother was "compensated well beyond her visible $10,500.00 annual taxable salary[,]" seemingly came to the $30,000 amount by adding her $10,500 salary to the $19,500 the court imputed to her and itemized under "other income" on the worksheet.
{¶ 28} In support of its findings, the court noted that mother is a shareholder in *701 her family's corporation, has access to a credit card account, receives monetary assistance for her cell phone as well as for other monthly bills, and collects other "untold benefits" from her father. The court also noted that, at one point, mother had "an expensive apartment lease and other reduced monthly expenses, such as gasoline for her car and credit cards paid off every month; yet remain[ed] eligible for food stamps and medical and health insurance from this county."
{¶ 29} Foremost, upon review, we find that the court erred in imputing an additional $19,500 to mother. There was no evidence to establish that mother could have found full-time employment as a secretary or marketer making $30,000. Ohio courts have reversed potential-income determinations where (1) the parties failed to produce evidence concerning prevailing salary levels in the geographic area where the parent resides as well as the availability of job opportunities, and (2) the court has failed to rationalize an additional imputation of income. See Apps v. Apps , 10th Dist. Franklin Nos. 02AP-1072 and 03AP-242, 2003-Ohio-7154, 2003 WL 23024253, ¶ 50 (lower court abused its discretion because it "gave no rationale for imputing $18,000 in income to appellant"); Dillon v. Dillon , 4th Dist. Athens No. 97CA03, 1997 WL 585737, 5 (Sept. 17, 1997) ("There is no evidence in the record to show that appellant could have earned $39,000 as a full time teacher in his community."); English v. Rubino , 8th Dist. Cuyahoga No. 68901, 1996 WL 157342, 3 (Apr. 4, 1996) ("There must be some evidence concerning the prevailing job opportunities and salary levels in the community, or the amount of imputed income determined by the court is merely arbitrary."); Dixon v. Dixon , 8th Dist. Cuyahoga No. 66997, 1995 WL 106137, 2 (Mar. 9, 1995) ("In light of * * * the absence of expert testimony on the issue of prevailing job opportunities and salary levels in Chicago, we find the court's imputation of $75,544 of annual income to the appellant to be arbitrary."). For example, in In re T.S. , 8th Dist. Cuyahoga No. 96657, 2011-Ohio-6756, 2011 WL 6917620, we upheld a decision imputing income to the appellant, who was a certified public accountant ("CPA"), "based on the median wage for CPAs in [the appellant's] geographical area for the years 2003 through 2008, as published by the U.S. Department of Labor, Bureau of Labor Statistics." Id. at ¶ 4.
{¶ 30} While we have previously recognized that a court need not "include a specific and thorough analysis of each R.C. 3119.01(C)(11)(a) factor in its judgment[,]" there must still be a sufficient basis upon which to impute income to a parent. In re T.S. at ¶ 14. We fail to find a sufficient basis here. The record is devoid of any evidence showing how or why the court concluded that mother could earn $30,000 in her particular geographic area with an uncompleted college education other than her W-2 forms. The court's discussion of mother's qualifications, without additional information concerning the geographical area's salaries for similarly qualified individuals, is not enough in this particular case to support its imputed income to mother.
{¶ 31} Second, we feel it is necessary to address the lower court's observation that mother is "compensated well beyond her visible $10,500.00 annual taxable salary[.]" If the court's imputation of the additional $19,500 in potential income was based on the belief that mother was receiving additional compensation from her family's corporation or her father, we still would reverse the court's decision as that finding was not supported by proper documentation as required by R.C. 3119.05(A).
*702 {¶ 32} As stated above, a parent's income must be verified by supporting documentation. R.C. 3119.05(A). Ohio courts have reversed child support orders and calculations based on the lack of documentary evidence. See In re K.R.B. , 2017-Ohio-7071, 95 N.E.3d 799, at ¶ 26 (finding an abuse of discretion because "[t]he child support worksheet * * * [did] not indicate upon what information the figures listed in the worksheet were based."); Montgomery v. Montgomery , 3d Dist. Union No. 14-14-22, 2015-Ohio-2976, 2015 WL 4510904, ¶ 50 ("[T]here is absolutely no documentation to support Heather's testimony regarding her commissions and that is simply not satisfactory pursuant to R.C. 3119.05(A) to create such an extrapolation."); Rymers v. Rymers , 11th Dist. Lake No. 2011-L-064, 2012-Ohio-1675, 2012 WL 1288726, ¶ 29 (finding that the lower court failed to verify the parents' incomes with proper documentation); Jajola v. Jajola , 8th Dist. Cuyahoga No. 83141, 2004-Ohio-370, 2004 WL 171348, ¶ 17-18 (reversing the court's child support determination because the mother did not provide suitable documentation to establish her annual income); Basham , 3d Dist. Allen No. 1-02-37, 2002-Ohio-4694, 2002 WL 31007154, at ¶ 8 ("As we have insufficient documentation to verify Kelly's income in 2001, the figure used by the trial court * * * is arbitrary and we are unable to affirm the trial court's decision."). Furthermore, testimonial evidence concerning a parent's income is insufficient to satisfy R.C. 3119.05(A). Basham at ¶ 7 ; see also Ellis v. Ellis , 7th Dist. Mahoning No. 08 MA 133, 2009-Ohio-4964, 2009 WL 2999354, ¶ 60 ("[P]ursuant to R.C. 3119.05(A) a trial court is restrained to review documents, not testimony, to establish income.").
{¶ 33} Here, besides mother's W-2 forms, neither party offered any evidence concerning the corporation's finances, such as payroll records, bank statements, documents showing dividends paid to the corporation's shareholders or other evidence of the corporation's accounting. Compare Marron v. Marron , 12th Dist. Warren Nos. CA2013-11-109 and CA2013-11-113, 2014-Ohio-2121, 2014 WL 2106731, ¶ 15 (noting that the mother presented testimony of a certified public accountant and expert in forensic accounting to support her claim for additional imputed income to the father). Therefore, the court's observation here is not supported by proper documentation and cannot serve as a sufficient basis to impute potential income to mother.
{¶ 34} Third, even if we assume that mother could have obtained full-time employment with a minimum wage salary, she would only have made $16,536 in 2014 and $16,848 in 2015 and 2016.[1] All of those amounts are much smaller than the $30,000 amount imputed by the juvenile court.
{¶ 35} Finally, we find the court erred in failing to include the cost of childcare in its child support worksheet. When calculating child support for parents with a shared parenting plan, line 19 in the worksheet set forth in R.C. 3119.022 requires the court to consider and include the expenses for childcare. In Varner v. Varner , 170 Ohio App.3d 448, 2007-Ohio-675, 867 N.E.2d 857 (9th Dist.), the court found that the trial court's failure to include the expenses for daycare in its worksheet constituted an abuse of discretion. Id. at ¶ 9.
{¶ 36} In this case, the parties presented testimony reflecting that mother takes *703 care of M.C.M. until 5:00 p.m.[2] Mother's care of M.C.M. during the day certainly may impact her ability to gain additional employment, a fact that the court did not appear to consider when finding that mother was voluntarily underemployed and imputing additional income to her. Further, if mother would gain additional or full-time employment, she would have to find another method of caring for M.C.M., which would mean that she would likely incur additional expenses. Therefore, the court's failure to consider mother's care for M.C.M. as well as any potential childcare expenses constitutes an abuse of discretion.
{¶ 37} In sum, the court abused its discretion when it determined that mother was earning or could have earned $30,000.
2. Calculation of Father's Gross Income
{¶ 38} Mother also argues that the juvenile court incorrectly calculated father's income by averaging the income he earned during 2014, 2015, and 2016. She argues that the court should not have averaged father's income because he did not work for Heartland Payment Systems ("HPS") for the entirety of 2014 and points out that father's 2015 income cannot be verified because he failed to submit his tax returns for that year. As a result, she argues that the court should only have used father's income from 2016 when he worked for HPS and West Geauga Local Schools and made over $80,000 according to documents submitted by father and mother.[3]
{¶ 39} Foremost, " 'a court is not limited to considering the gross income as stated in the tax returns.' " In re Massey v. Lambert , 7th Dist. Columbiana No. 09 CO 29, 2011-Ohio-1341, 2011 WL 1005133, ¶ 57, quoting Staffrey v. Smith , 7th Dist. Mahoning No. 09-MA-107, 2010-Ohio-1296, 2010 WL 1177647. "Although federal and state tax documents provide a proper starting point to calculate a parent's income, they are not the sole factor for the trial court to consider." Glassman , 8th Dist. Cuyahoga Nos. 85838, 85863, and 87175, 2006-Ohio-3837, 2006 WL 2096587, at ¶ 23, citing Foster v. Foster , 150 Ohio App.3d 298, 2002-Ohio-6390, 780 N.E.2d 1041 (12th Dist.), and Houts v. Houts , 99 Ohio App.3d 701, 651 N.E.2d 1031 (3d Dist. 1995). A court may look to supporting documentation, such as W-2 or 1099 forms, as promulgated by R.C. 3119.05(A). Massey at ¶ 57. Therefore, the magistrate was permitted to calculate father's 2015 income by considering his W-2 forms from that year.
{¶ 40} Turning to the court's decision to average father's income, R.C. 3119.05(H) allows a juvenile court to calculate a parent's gross income by averaging the income earned "over a reasonable period of years" "when appropriate." A trial court, having the "best position to weigh the facts and circumstances of the case[,]" must decide if the averaging method is appropriate on a case-by-case basis. Wright v. Wright , 8th Dist. Cuyahoga No. 91026, 2009-Ohio-128, 2009 WL 94758, ¶ 24.
{¶ 41} "The income averaging method permitted by [ R.C. 3119.05(H) ] has been found to offer a useful method for calculating gross income when [a parent's] income is unpredictable or inconsistent." Id. , citing In re Kohlhorst , 3d Dist. Auglaize No. 2-06-09, 2006-Ohio-6481, 2006 WL 3544738.
*704 Nevertheless, while a court may average a parent's annual income when they are commission-based, it may only use income figures that reflect an entire year's salary for a particular job. See id. at ¶ 20 (finding that the court erred in averaging the mother's incomes from 2011 and 2012 because it "only had evidence of [her] income from commissions for part of 2011"); Heuer v. Heuer , 10th Dist. Franklin No. 92AP-1512, 1993 WL 220904, 5 (June 8, 1993) (finding that the court erred in using the father's income from an employment contract because it did not represent a full year of his gross income).
{¶ 42} Here, father did not begin working for HPS until approximately June 2014. In other words, the records he submitted in relation to his commission-based salary from HPS in 2014 did not reflect a complete year. Accordingly, the court should not have used the $48,048 reflected on father's 2014 tax forms when averaging father's income. Therefore, we find that the court's income determination for father was inequitable.
{¶ 43} Although we are reversing the court's income determination for father based on the above discussion, we note that we are unable to discern how the court determined that the average of father's salaries for 2014, 2015, and 2016 was $62,523. To calculate a parent's income, a court must use a parent's gross income. R.C. 3119.01(A)(5)(a) ; see also Ohlemacher v. Ohlemacher , 9th Dist. Lorain No. 02CA008108, 2003 WL 187894, 2 (Jan. 29, 2003) (finding reversible error where "the lower court based the modified child support award on the adjusted gross income of the parties rather than their gross incomes as required by the statute"). Based on our review of the record, it appears that father had a gross income of $48,048 for a partial year in 2014; $50,235.13 in 2015; and $82,733 in 2016. The average of those years salaries is $60,389.15, which is $2,133.85 less than what was listed on the court's child support worksheet.[4] In light of our confusion in this particular case, we urge the lower court to set forth the particular figures that it utilizes when completing the child support worksheet. Accordingly, we sustain mother's second and third assignments of error.
C. Validity of CJFS-OCSS's Order
{¶ 44} There is an additional issue we need to address. In Hannah v. Hannah , 2016-Ohio-1538, 63 N.E.3d 703, we noted that "3119.70 clearly require[s] a determination by the court regarding the validity of the agency's child support calculation before the court may conduct an independent review and order a revised amount." Id. at ¶ 14. In that case, we found that the lower court "made no determination that the agency's revised child support amount was inappropriate when it adopted the magistrate's decision" and, therefore, abused its discretion. Id.
{¶ 45} Here, the juvenile court's judgment entry stated:
The testimony and exhibits were all considered for the primary purpose to review the administrative child support order issued by CJFS-OCSS on May 5, 2016. The Court finds that the administrative order is devoid of any finding of *705 facts how the incomes for both parents were established and thus failing to explain basis for the calculations of child support obligation. The Court finds that a review of the administrative child support order is necessary under these circumstances, no matter who may have requested one.
The court then made a number of its own findings. While the court stated that it would review CJFS-OCSS's order, it did not make a determination as to the validity of that order. Based on our decision in Hannah , we find that the court erred by failing to determine the validity of CJFS-OCSS's child support order and income calculations.
{¶ 46} Judgment reversed and remanded. We remand the matter to the trial court for a new evidentiary hearing to (1) determine the validity of CJFS-OCSS's order, and (2) redetermine mother's and father's incomes for purposes of child support.
PATRICIA ANN BLACKMON, J., and KATHLEEN ANN KEOUGH, J., CONCUR

These calculations are based on the assumption that mother would work 40 hours per week and 52 weeks per year, using Ohio's minimum wage rates, which were $7.95 per hour in 2014 and $8.10 per hour in 2015 and 2016.

It is not clear from the record as to whether mother cares for M.C.M. until 5:00 p.m. on weekends as well or whether mother and father split the parenting time a different way on weekends.

There is a discrepancy as to what father's gross income was for 2016, which we address later in this section.

Father's gross annual income for 2016 was based on the $77,586.91 and $5,297.40 listed on his W-2 forms, provided in one of mother's exhibits and father's Exhibit I. Father also submitted Exhibit H, which was an earning statement, dated December 30, 2016, from HPS, however, that listed his year-to-date earnings as $82,733. Adding the salary listed on the paystub to the $5,297.40 listed on father's W-2 form from West Geauga schools, results in a gross income of $88,030.40 for 2016. Neither party submitted father's tax returns for 2016 and, thus, we are left with the W-2 forms and earning statement.