[Cite as *In re K.R.B.*, 2017-Ohio-7071.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105084**

# IN RE: K.R.B.
# A Minor Child

## [Appeal By K.B., Father]

**JUDGMENT:**
REVERSED; REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. PR11700626

**BEFORE:** E.A. Gallagher, P.J., S. Gallagher, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** August 3, 2017

**ATTORNEYS FOR APPELLANT**

Alyssa M. Allen
P.O. Box 39631
Solon, Ohio 44139

Terrence E. Scanlon
101 Clemson Court
Elyria, Ohio 44035

**ATTORNEY FOR APPELLEE**

Amy L. Nash
1180 Winston Road
Cleveland, Ohio 44121

**GUARDIAN AD LITEM**

Susan Jankite
1253 Arlington Road
Lakewood, Ohio 44107

**ALSO LISTED**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY: Terri M. Hammons-Brown
Daniel A. Starett
Joseph C. Young
Assistant Prosecuting Attorneys
Cuyahoga County Job and Family Services - Office of Child Support Services
9300 Quincy Avenue, 4th Floor
Cleveland, Ohio 44115

EILEEN A. GALLAGHER, P.J.:

{¶1} Defendant-appellant K.B. ("the father") and appellee A.G. ("the mother") are the unmarried parents of a minor daughter, K.R.B. The father appeals from an order of the Cuyahoga County Juvenile Court ordering him to pay the mother child support. For the reasons that follow, we reverse.

**Factual and Procedural Background**

{¶2} The mother and the father have one child together, K.R.B., who was born in January 2007. In 2009, the father married B.B. The father and B.B. have two children together. The mother is single.

{¶3} In January 2011, the father filed a complaint to establish a parent-child relationship with K.R.B., an application to determine custody and a motion to adopt a shared parenting agreement that had been previously executed by the parties. Under the shared parenting agreement ("the agreement"), both parents were designated residential parents and legal custodians of K.R.B., but the mother was designated the residential parent for school purposes. The agreement provided that parenting time with K.R.B. would be worked out between the parents and, if they could not agree, specified the time K.R.B. would spend with each parent. Pursuant to the agreement, neither parent was to pay the other child support, and the parents were each entitled to claim a tax exemption for K.R.B. in alternating tax years. With respect to medical care, the mother was to obtain insurance coverage for K.R.B. through her employer and to pay any out-of-pocket

and uncovered medical expenses and the father was responsible for all copayments and prescription costs. The parents also agreed that any costs for extracurricular activities would be shared equally by the parties so long as they both agreed in writing that K.R.B. should participate.

**{¶4}** On May 17, 2011, the juvenile court approved and adopted the agreement as an order of the court, finding it to be in the best interest of the child (the "shared parenting order").[1]

**{¶5}** Four years later, in July 2015, the parents filed separate motions to show cause and to modify the shared parenting order. The father claimed that the mother had violated the court's order by, among other things: (1) failing to file a notice of intent to relocate when she had moved, (2) failing to provide her work address and phone number to the father, (3) failing to inform the father of school activities and events and (4) enrolling K.R.B. in extracurricular activities that interfered with the father's parenting time without discussing it with him. He also contended that the mother had failed to continue psychological treatment and testing recommended by K.R.B.'s psychologist, exposed K.R.B. to "adult situations" and had failed to follow medical advice regarding K.R.B.'s exposure to cigarette smoke. He requested that he be granted "primary legal and physical custody" of K.R.B.

---

[1]It does not appear that a child support worksheet was completed at the time the juvenile court approved and adopted the shared parenting agreement.

**{¶6}** The mother claimed that the father had "repeatedly and continuously" made decisions regarding the child's health and welfare without consulting her, which were "negatively impacting" K.R.B. The mother also claimed that K.R.B. wanted to spend weekends with the mother as well as the father and that, because K.R.B. was now school age, the 8:00 p.m. weeknight visits provided for under the shared parenting order interfered with her bedtime.

**{¶7}** In December 2015, the parties submitted proposed amendments to the shared parenting order. The father's proposed amendments included a request that he be designated the residential parent for school purposes, that the mother pay the father child support according to the child support worksheet and that the father have the right to claim K.R.B. as a dependent for federal income tax purposes in all years. The mother's proposed amendments included a request that she be deemed the residential parent and legal custodian of K.R.B. and that the father be granted visitation in accordance with Loc.R. 29 of the Cuyahoga County Juvenile Court. In January 2016, the juvenile court entered a pretrial order modifying the parties' parenting time under the shared parenting order. The court granted the mother parenting time the first weekend of each month and required that K.R.B. be returned by 6:00 p.m. following any parenting time exchanges.

**{¶8}** On April 18 and 19, 2016, the juvenile court held an evidentiary hearing on the parents' motions to show cause and to modify the shared parenting order. On July 19, 2016, the juvenile court issued two journal entries relating to the parents' motions (collectively, the "July 19, 2016 journal entry"). In the first journal entry, the juvenile

court summarized the evidence presented during the first day of the hearing. In the second journal entry, the juvenile court summarized the evidence presented on the second day of the hearing and set forth its rulings on the parties' motions. With respect to the parties' motions to modify the shared parenting order, the juvenile court found that there had been "no change in circumstances of the child" since the parties entered the shared parenting agreement. Considering the best interest of K.R.B. and the factors set forth in R.C. 3109.04(F), the juvenile court ordered that shared parenting remain in effect, that the mother remain as the residential parent for school purposes and modified the parenting schedule slightly such that during the school year, the father would have K.R.B. three weekends a month (from Thursday after school until Monday morning) and from Tuesday after school until Wednesday at 7:00 p.m. when he did not have K.R.B. on the weekend. During the summer, the parents would spend alternate weeks with K.R.B. The juvenile court further noted that "there does not appear to be a child support order for [K.R.B.]" and indicated that child support would be ordered "in a separate entry based on the income information submitted to the Court." The juvenile court denied the parties' motions to show cause and stated that "all Orders not modified herein shall remain in full force and effect."

{¶9} On August 3, 2016, the mother filed a motion for clarification, asserting that the July 19, 2016 journal entry failed to impose a holiday schedule, to address issues surrounding extracurricular activities and to indicate who was entitled to claim the tax exemption for K.R.B. The father filed objections to the motion, arguing that these issues

were addressed by the court's statement in the journal entry that "all Orders not modified herein shall remain in full force and effect."

{¶10} On September 21, 2016, the juvenile court entered an order addressing the issues raised in the mother's motion for clarification and determining child support. The court retained the holiday schedule set forth in the shared parenting agreement, imposed certain requirements to ensure K.R.B.'s participation in extracurricular activities and ordered that the parties share equally in the cost of extracurricular activities. With respect to child support, the juvenile court designated the father the child support obligor and the mother the child support obligee. The juvenile court calculated the parties' annual child support obligations pursuant to the applicable worksheet and, after considering the factors set forth in R.C. 3119.23, found that "the annual obligation would be unjust and inappropriate and would not be in the best interest of the minor child." The juvenile court, therefore, ordered the father to pay the mother $224.75 per month ($2,697.00 annually) in child support (plus the 2% processing fee).[2] The court also ordered that the parents share any out-of-pocket medical expenses, 43% to be paid by the father and 57% to be paid by the mother.

{¶11} The father appealed from the juvenile court's order imposing child support, raising the following two assignments of error for review:

---

[2]The juvenile court ordered the father to pay the mother $224.75 per month (plus the 2% processing fee) when private health insurance is provided and $159.11 plus cash medical support of $112.00 per month (plus the 2% processing fee), when private health insurance is not provided. The court found that K.R.B. had private health insurance.

Assignment of Error No. I: The trial court erred in designating appellant father the child support obligor.

Assignment of Error No. II: The trial court erred in determining the amount of child support father was to pay.

The father's assignments of error are interrelated and will be addressed together.

**Law and Analysis**

{¶12} In his first assignment of error, the father contends that the juvenile court erred in designating him child support obligor without making findings of fact supporting that decision. He further contends that its decision to designate the father the child support obligor is against the manifest weight of the evidence because he has equal parenting time with K.R.B., earns less than the mother and has a wife and two other children whom he also supports. In his second assignment of error, the father contends that the juvenile court made several "mistakes" in applying the relevant R.C. 3119.23 factors — overlooking R.C. 3119.23(B) and misinterpreting R.C. 3119.23(J) — "making his child support obligation higher than it otherwise would have been."

{¶13} R.C. 3119.02 governs the calculation of child support. Under R.C. 3119.02, a parent's child support obligation shall be calculated "in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to 3119.24 of the Revised Code." The amount of child support calculated pursuant to the basic child support schedule and applicable worksheet is "rebuttably presumed to be the correct amount of child support due." R.C. 3119.03.

**{¶14}** R.C. 3119.24 applies in cases involving shared parenting. R.C. 3119.24(A) provides:

> (1) A court that issues a shared parenting order in accordance with section 3109.04 of the Revised Code shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet set forth in section 3119.022 of the Revised Code, through the line establishing the actual annual obligation, except that, if that amount would be unjust or inappropriate to the children or either parent and would not be in the best interest of the child because of the extraordinary circumstances of the parents or because of any other factors or criteria set forth in section 3119.23 of the Revised Code, the court may deviate from that amount.

> (2) The court shall consider extraordinary circumstances and other factors or criteria if it deviates from the amount described in division (A)(1) of this section and shall enter in the journal the amount described in division (A)(1) of this section its determination that the amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting its determination.

"Extraordinary circumstances of the parents" include:

> (1) The amount of time the children spend with each parent;

> (2) The ability of each parent to maintain adequate housing for the children;

> (3) Each parent's expenses, including child care expenses, school tuition, medical expenses, dental expenses, and any other expenses the court considers relevant; [and]

> (4) Any other circumstances the court considers relevant.

R.C. 3119.24(B). R.C. 3119.23 sets forth additional factors the juvenile court "may consider" in determining whether to grant a deviation from the presumed child support obligation.

**{¶15}** If the court deviates from the presumed child support obligation, it must journalize: (1) the amount of child support calculated pursuant to the basic child support schedule and the applicable worksheet; (2) its determination that the amount would be unjust or inappropriate and not in the child's best interest and (3) findings of fact supporting its determination. R.C. 3119.22; R.C. 3119.24(A)(2); *see also Depalmo v. Depalmo*, 78 Ohio St.3d 535, 537, 679 N.E.2d 266 (1997); *Marker v. Grimm*, 65 Ohio St.3d 139, 601 N.E.2d 496 (1992); *In re C.A.S.*, 8th Dist. Cuyahoga Nos. 104052 and 104054, 2016-Ohio-5633, ¶ 18.

**{¶16}** A juvenile court has considerable discretion is deciding matters related to child support. We will not reverse a child support order absent an abuse of that discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). An abuse of discretion occurs where a juvenile court's decision is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983); *see also In re C.A.S.* at ¶ 17 (Abuse of discretion "'is a term of art, describing a judgment neither comporting with the record, nor reason.'"), quoting *Klayman v. Luck*, 8th Dist. Cuyahoga Nos. 97074 and 97075, 2012-Ohio-3354, ¶ 12.

**{¶17}** In this case, the juvenile court used a child support worksheet to calculate the parents' annual child support obligation and attached the worksheet to its journal entry. The court calculated the annual child support obligation for the father at $4,084.27 and the annual support obligation for the mother at $5,516.73. "Based on testimony and exhibits submitted," the juvenile court determined that the father was the

child support obligor and the mother was the child support obligee. The juvenile court further found that the presumed annual child support obligation "would be unjust and inappropriate and would not be in the best interest of the minor child." It, therefore, deviated from that obligation, ordering the father to pay $2,697.00 in annual child support instead of the $4,084.27 calculated under the child support worksheet.

{¶18} In "deviat[ing] from the [presumed] annual obligation," the juvenile court indicated that it considered the following factors under R.C. 3119.23:

(A) Special and unusual needs of the children; *not applicable*;

(B) Extraordinary obligations for minor children or obligations for handicapped children who are not stepchildren and who are not offspring from the marriage or relationship that is the basis of the immediate child support determination; *not applicable*;

(C) Other court-ordered payments; *not applicable*;

(D) Extended parenting time or extraordinary costs associated with parenting time, provided that this division does not authorize and shall not be construed as authorizing any deviation from the schedule and the applicable worksheet, through the line establishing the actual annual obligation, or any escrowing, impoundment, or withholding of child support because of a denial of or interference with a right of parenting time granted by court order; *the deviation is based on time spent with the child*;

(E) The obligor obtaining additional employment after a child support order is issued in order to support a second family; *the Father completed higher education and has gained full-time employment*;

(F) The financial resources and the earning ability of the child; *not applicable*;

(G) Disparity in income between parties or households; *not applicable*;

(H)   Benefits that either parent receives from remarriage or sharing living expenses with another person; *although the Father is married, the worksheet is calculated that contemplates two biological children that reside in the Father's household*;

(I)   The amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents; *not applicable*;

(J)   Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing; *testimony stated that the Mother incurred the cost of extracurricular activities though the Shared Parenting Agreement states that the cost should be equally shared*;

(K)   The relative financial resources, other assets and resources, and needs of each parent; *both Parties are similar in income*;

(L)   The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married; *not applicable*;

(M)   The physical and emotional condition and needs of the child; *not applicable*;

(N)   The need and capacity of the child for an education and the educational opportunities that would have been available to the child had the circumstances requiring a court order for support not arisen; *not applicable*;

(O)   The responsibility of each parent for the support of others; *the Father has two (2) biological children residing in his household*;

(P)   Any other relevant factor.

**{¶19}** The father acknowledges that the juvenile court made findings of fact to lower his child support obligation; however, he contends that the juvenile court's decision to designate him the child support obligor was, in and of itself, a "deviation" from the statutory guidelines for which specific findings of fact supporting the decision were

required. The father also contends that the juvenile court abused its discretion in designating him the child support obligor without explaining the basis for its determination. *See Mahlerwein v. Mahlerwein*, 160 Ohio App.3d 564, 2005-Ohio-1835, 828 N.E.2d 153, ¶ 23-26 (4th Dist.) (magistrate erred in failing to explain determination that mother should be child support obligor for purposes of the child support worksheet where neither party previously held the designation and magistrate's decision together with the record "offer[ed] no insight" regarding the factors the magistrate considered in determining who would be the child support obligor); *French v. Burkhart*, 5th Dist. Delaware No. 99CAF07038, 2000 Ohio App. LEXIS 2178 (May 22, 2000) (trial court must state "specific facts in support of any decision to initially designate a[n] 'obligor' parent for completion of the child support worksheet in shared parenting cases, when using a 'sole custody calculation with deviations' method").

{¶20} The mother disagrees. She asserts that the designation of the father as obligor was not a deviation from the statutory worksheet, that the court is "required to order child support in custody and shared parenting cases" and that the juvenile court's child support order was a proper exercise of its discretion.

{¶21} In this case, there is nothing in the record that provides any insight as to why the juvenile court determined that the father should be the obligor for child support purposes. Here, both parents were "residential parents and legal custodians." R.C. 3109.04(L)(6). Simply because the mother was deemed the residential parent for school purposes and had slightly more parenting time with K.R.B. under the shared parenting

agreement[3] does not necessarily mean that the father should have been designated the obligor for purposes of child support. *See, e.g., Kilgore v. Kilgore*, 11th Dist. Ashtabula Nos. 2008-A-0006 and 2008-A-0008, 2008-Ohio-5858, ¶ 25. A parent is not entitled to an automatic credit in child support obligations for time spent with the children under a shared parenting order. *See, e.g., Mattis v. Mattis*, 10th Dist. Franklin No. 15AP-446, 2016-Ohio-1084, ¶ 31; *Pauly v. Pauly*, 80 Ohio St.3d 386, 388-390, 686 N.E.2d 1108 (1997). Under R.C. 3119.24(B) and 3119.23, the time a child spends with each parent is just one factor to be considered in determining whether extraordinary circumstances exist or a deviation is otherwise appropriate.

**{¶22}** Although the juvenile court stated that its designation of the father as child support obligor was "[b]ased on testimony and exhibits submitted," its journal entry does not explain what "testimony and exhibits"[4] led the juvenile court to make this determination. Likewise, although the juvenile court made a few factual findings in

---

[3]In her brief, the mother asserts that K.R.B. is with her approximately 54% of the time and with the father approximately 46% of the time under the shared parenting agreement. There is insufficient information in the record to allow us to determine whether this calculation is accurate. To the extent the mother has greater parenting time, it appears that much of this time is while K.R.B. is in school.

[4] The exhibits have not been included with the record on appeal. However, based on our review of the transcript from the April 18 and 19, 2016 hearing, it appears that the exhibits offered consisted of: an email from the father to the mother regarding various parenting concerns, an email from K.R.B.'s guidance counselor responding to an inquiry from the father, a couple of notices of the mother's change of address, the guardian ad litem's report, K.R.B.'s test results and grades and a photograph of the mother with K.R.B. and her soccer team. None of these exhibits would appear to have had any bearing on child support.

evaluating the relevant R.C. 3119.23 factors, its journal entry does not explain how those findings supported its decision (1) to designate the father as the child support obligor and (2) to order him to pay child support in the amount ordered by the juvenile court. This is not a case in which the juvenile court's reasoning can be discerned from its analysis of the relevant R.C. 3119.23 factors or its statement of the facts in and of itself. *Compare Cameron v. Cameron*, 10th Dist. Franklin No. 06AP-793, 2007-Ohio-3994, ¶ 13-14 (although noting it was "not bound by the decision in *French*," concluding that trial court provided a sufficient explanation for its decision to name father child support obligor based on the large income disparity between the parents, the mother's greater child care expenses, the mother's reliance on her current spouse's income to support the children and the mother's inability to maintain housing similar to the father without child support); *Sexton v. Sexton*, 10th Dist. Franklin No. 07AP-396, 2007-Ohio-6539, ¶ 10, 12-13 (trial court did not abuse its discretion and provided sufficient justification for its designation of father as child support obligor, despite the fact that he had greater parenting time than mother, where the trial court indicated that it was designating appellant the obligor because it was not relying "too heavily" upon the time allocation between the parents and it was in the children's best interest, the parties had very disparate incomes and it was necessary to allow the children to enjoy a similar standard of living in both of their parents' homes); *see also MacMurray v. Mayo*, 10th Dist. Franklin No. 07AP-38, 2007-Ohio-6998, ¶ 25-29 (noting that although the "better practice" may be for the trial court to set out facts supporting its residential parent designation, "little would be gained

in remanding for such an exercise * * * where the facts supporting the trial court's designation are specifically incorporated into the trial court's order"). In short, we cannot determine, based on the limited findings contained in the September 21, 2016 journal entry (or otherwise in the record), how or why the juvenile court came to the decision it did.

{¶23} Although the juvenile court found that the father had "completed higher education and has gained full-time employment," there is nothing in the record that shows how these changes impacted the father's income. The parents have roughly equal parenting time and similar annual gross incomes. According to the child support worksheet attached to the juvenile court's September 21, 2016 journal entry, the father has $41,987 in annual gross income and the mother has $45,558 in annual gross income. Once adjustments are made for the father's two other minor children and local income taxes, the income disparity is greater — the father has $33,047.26 in adjusted annual gross income and the mother has $44,646.84 in adjusted gross income — resulting in a presumed annual child support obligation under the child support worksheet of $4,084.27 for the father and $5,516.73 for the mother. There is very limited information in the record regarding the parent's expenses. The juvenile court's journal entry indicates that K.R.B. has private health insurance but does not indicate which parent is providing heath insurance coverage for K.R.B. The parties offered conflicting testimony at the hearing regarding who was providing health insurance coverage for K.R.B. Although under the original terms of the shared parenting agreement, the mother was to provide health

insurance coverage for K.R.B., at the hearing the father testified, "We carry [K.R.B.] on our insurance now currently * * * She has secondary." The mother testified, however, that she "covers [K.R.B.'s] medical."

{¶24} The juvenile court also indicated, in considering the R.C. 3119.23(J) factor, that the mother had previously incurred the cost of certain extracurricular activities. However, in its September 21, 2016 order, the juvenile court ordered that the costs of extracurricular activities be shared equally between the parents. Further, only limited information was offered at the hearing regarding the costs of extracurricular activities. The parties' dispute regarding extracurricular activities centered around K.R.B.'s attendance at two extracurricular activities the mother had signed her up for — soccer and a summer day camp — not who was bearing the cost of those activities. The father complained that these activities interfered with his parenting time and the mother complained that the father had failed to take K.R.B. to several of her soccer games. With respect to cost, the mother testified that she paid an unspecified sum for "cleats and shin guards and stuff" but that there was no participation cost because she coached the team. The mother further testified that in the summer of 2015, she enrolled K.R.B. in a summer day camp for which she paid approximately $1,000. The father testified that the mother informed him after-the-fact that she had signed K.R.B. up for the day camp and that she was paying for it. The mother testified that she did not discuss the issue with the father prior to enrolling K.R.B. because she did not consider day camp an extracurricular activity, but rather, "like daycare." The father testified that he had paid for

extracurricular activities K.R.B. participated in during his parenting time, such as gym classes and dance and swimming lessons, but did not testify as to the cost of those activities.[5]

**{¶25}** We are by no means suggesting that a juvenile court's explanation of its child support determination need be so specific or detailed as to support, dollar-by-dollar, the particular child support obligation imposed by the court. *See Lopez-Ruiz v. Botta*, 10th Dist. Franklin No. 11AP-577, 2012-Ohio-718, ¶ 7. But there must be sufficient information in the juvenile court's journal entry imposing child support (or otherwise in the record) to allow a reviewing court to discern why the juvenile court did what it did and why it determined its decision was in the best interest of the child. Without such information, we are unable to properly assess whether the juvenile court's decision was the product of a sound reasoning process or was unreasonable, arbitrary or unconscionable. *See, e.g., Mahlerwein,* 160 Ohio App.3d 564, 2005-Ohio-1835, 828 N.E.2d 153, at ¶ 24; *see also Green v. Tarkington*, 3d Dist. Mercer No. 10-10-02, 2010-Ohio-2165, ¶ 22 (where the record did "not reflect the trial court's reasoning and findings as to how [its] decisions [regarding child support] relate to the best interest of the

---

[5]The father also contends that the juvenile court erred in failing to consider his "extraordinary obligations" for one of his other two children when determining the amount of child support he should pay to the mother. *See* R.C. 3119.23(B). Although the father and B.B. testified that one of their children, a daughter born in 2013, had some serious health issues during the first year of her birth, there is no evidence in the record to support the father's claim that he had continuing extraordinary obligations with respect to that child. Nor was any evidence presented as to amount of any medical expenses incurred with respect to that child.

child," appellate court was "unable to determine" whether or not the trial court's determinations regarding child support were an abuse of discretion).

**{¶26}** In this case, the juvenile court advised the parties in its July 19, 2016 journal entry that child support would be ordered "based on the income information submitted to the Court." It is, however, unclear what "income information" was submitted to the juvenile court. Other than the very limited testimony offered by the parties regarding their earnings and expenses during the April 2016 hearing, the only "income information" in the record is the child support worksheet, dated July 14, 2016, attached to the juvenile court's September 21, 2016 journal entry. The child support worksheet is not signed by the mother, the father or their respective counsel to indicate their review of or agreement to the information contained therein and it does not indicate upon what information the figures listed in the worksheet were based.[6]

**{¶27}** Based on the record before us, we find that the juvenile court abused its discretion in entering the child support order it entered in this case.

---

[6] We also question whether the juvenile court provided the parties with sufficient notice and an opportunity to be heard prior to ordering child support. Although there is no indication in the record that the mother ever requested child support, the father, in his proposed amendments to the shared parenting order, requested that he be paid child support according to the child support worksheet. Thus, the parties could not have been completely surprised that the juvenile court might enter a child support order in ruling on the parties' motions to modify the shared parenting order. *See also* R.C. 3119.24(A). However, none of the hearing notices or journal entries issued in advance of the April 2016 hearing specifically indicated that the court would be making a determination of child support. As noted above, the focus of the hearing was shared parenting issues, not child support. Very limited evidence was presented at the hearing regarding the parties' income and expenses or other matters relevant to a determination of child support.

**{¶28}** We sustain the father's assignments of error in part and overrule them in part. We vacate the juvenile court's child support order and remand the case for a hearing on the issue of child support.

**{¶29}** Judgment reversed; remanded.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
PATRICIA A. BLACKMON, J., CONCUR