[Cite as *In re: M.W.*, 2018-Ohio-2931.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 105955**

---

**IN RE: M.W.**
**A Minor Child**

[Appeal by J.S., Father]

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. SU 15709668

**BEFORE:** McCormack, J., E.A. Gallagher, A.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** July 26, 2018

**ATTORNEY FOR APPELLANT**

Jeffrey F. Slavin
26727 Fairmount Blvd.
Beachwood, OH   44122


**ATTORNEYS FOR APPELLEES**

**For K.S.**

Ellen S. Mandell
25700 Science Park Drive, Suite 160
Beachwood, OH   44122-7317

**For CCDCFS**

Michael C. O'Malley
Cuyahoga County Prosecutor

Terri M. Hammons-Brown
Daniel A. Starett
Assistant Prosecuting Attorneys
9300 Quincy Avenue, 4th Floor
Cleveland, OH   44106


**GUARDIAN AD LITEM**

Susan K. Jankite
1253 Arlington Road
Lakewood, OH   44107

TIM McCORMACK, J.:

{¶1} Defendant-appellant J.W. ("Father") appeals from a judgment of the Cuyahoga County Common Pleas Court, Juvenile Division, establishing child support. For the reasons that follow, we affirm.

### Procedural History and Factual Background

{¶2} Father and K.S. ("Mother") had a relationship from which a minor child, M.W., was born in 2003. Mother and Father had an "on-again-off-again" relationship for a period of time but never married.

{¶3} In November 2013, the court issued a parenting plan and Mother was awarded custody of M.W. The parties later agreed to a modification of the parenting plan wherein Mother remained the custodial parent and Father received additional parenting time. On June 25, 2015, the Cuyahoga Job and Family Services ("CJFS") issued an administrative child support order. Father filed an objection to the child support order, alleging that he had no input into the child support calculations, he objected to the administrative order, and the child support order was based on daycare that was not being paid. Thereafter, Mother filed a motion for past care child support, seeking child support from the date of the child's birth, and Father filed a motion for child support.

{¶4} The court heard the matter on January 4, 2017, and March 15, 2017.[1]

{¶5} Both Mother and Father testified. Mother testified that M.W. has lived with her from the child's birth until the present. Although Father testified that he and Mother lived

---

[1] Due to a technological malfunction, some of Father's direct testimony was not recorded. Therefore, the trial court issued a statement of the evidence, which contained the court's recollection, as well as the parties' recollection, of the unrecorded testimony. The statement included testimony upon which the parties agreed and disagreed. This court includes this statement and the portions of the hearing that did record for its review and consideration of the issues presented on appeal.

together for a period of time, Mother denied that they ever resided together. Initially, the parents developed their own schedule as it related to visitation with the child. When M.W. began preschool, the parenting schedule was more structured, and the parents developed a definitive parenting schedule for Tuesday and Thursday after school. M.W. attended daycare from birth until kindergarten, for which the parents equally shared the cost. For several months, Father utilized a low-income daycare voucher he obtained through Cuyahoga County, and Mother paid the difference. The parties testified that before M.W. attended parochial grade school, Father contributed $100 in tuition and $100 for aftercare programs and school lunches. Father had parenting time four to five days per week.

{¶6} Mother and M.W. moved to Chicago for one year, during the 2012-2013 school year, when the child was ten years old. Father visited M.W. approximately twice in Chicago, and M.W. would go to Cleveland every other weekend for visits with Father. The parents both testified that when Mother and M.W. returned to Cleveland, Mother and Father shared the costs of two summer camps, which cost approximately $600 each camp. The Garfield Heights residence owned by Mother became rental property for Mother when she returned from Chicago. Mother provided that her rental income is reflected on her tax returns.

{¶7} From kindergarten through the third grade, M.W. attended a parochial grade school. Mother testified that tuition was approximately $3,000 annually. Mother also testified that both parents agreed upon private education for M.W. Mother stated that she wanted M.W. to continue with a parochial high school education as well, because she has always been an advocate of Catholic schools and she prefers that environment for her son. She testified that she and Father never agreed to move M.W. to public schools after the eighth grade. The tuition for the parochial high school was approximately $14,000 at the time of trial.

**{¶8}** Mother stated that from August 2013 until November 2015, Father paid for aftercare and hot lunches, which was during M.W.'s first through third grades. The actual amount paid is unknown because no receipts were exchanged. Mother testified that she requested Father to assist with basic needs of the child, such as the costs of a specific activity, sports, equipment, or a vacation. She cannot recall if Father paid for some of M.W.'s clothes prior to 2011, but she recalled that Father paid for the costs of extracurricular activities upon request 50 percent of the time. Mother testified that she requested child support in 2013 because the costs associated with M.W. increased and the amount of Father's contribution was no longer sufficient. She also testified that she did not seek more support from him prior to that time because Father would retaliate by not picking up their son. Mother stated that she pays for all of M.W.'s uncovered medical expenses, including $4,000 for braces and additional costs incurred for emergency room visits and yearly physicals, and she never requested financial assistance from Father for these costs.

**{¶9}** Mother is employed by the Sherwin-Williams Company. According to Mother's tax returns, her adjusted gross annual income increased from $56,869 in 2011 to $106,851 in 2015. Mother testified that her 2016 income was approximately $120,000. Father is currently employed by the city of Cleveland. Father provided W-2's for 2011-2015, but he did not have a W-2 for 2016. He estimated his current income at approximately $57,000. He received a tax refund of $4,692.29 in 2015.

**{¶10}** Father owns rental property. Father testified, however, that he operates the property at a loss, due to maintenance expenses and depreciation. According to Father, his rental expenses amounted to approximately $20,000. He testified that he paid approximately $3,000 in remodeling expenses, and his parents loaned him an additional $5,000 for the

remodeling. His rental property is a duplex, and according to Father, he has not been able to rent out one-half of the duplex. He owns a 2013 Chevy Tahoe truck, for which he pays $500 per month.

{¶11} Father calculated that he and Mother shared the cost of daycare, which was approximately $750 per month. He testified that after the third grade, Father paid $200 each month for tuition and $50 for lunches, and he also paid approximately $300 per month when he exercised parenting time in Chicago. He stopped paying tuition when the court ordered child support. Father stated that he had possession of the child every weekend during flag football season. He also stated that he purchased a new home and moved to Mayfield Heights. He stopped paying tuition because he believed that M.W. could attend a good public school in his district. He did not discuss his intent with Mother before moving.

{¶12} According to the parenting plan issued in November 2013, Mother remained the custodial parent, and the parenting time was designated as follows: M.W. is with Father on Tuesdays and Thursdays after school until drop-off at school the next morning; M.W. is with Father on alternate weekends from Friday evening after school until Sunday, no later than 5:00 p.m.; holidays shall be alternated, with Mother having parenting time in odd-numbered years and Father having parenting time in even-numbered years, or as otherwise agreed by the parties; Mother and Father will split each of the school's winter and spring breaks; and for summer vacation, each parent may exercise up to two weeks of uninterrupted vacation time, with the remainder of the summer on the regular schedule. In November 2015, upon Father's motion, the parties entered into a modified parenting plan. The modified plan increased Father's parenting time such that alternate Sundays were extended to Monday mornings, and if there was

no school Monday morning, Father would make daytime childcare arrangements until the end of the day when Mother's parenting time commenced.

{¶13} On June 5, 2017, the court issued a decision in which it granted Father's objections, in part; denied Father's motion for child support; and granted Mother's motion for past care child support, in part.

{¶14} Father now appeals, raising the following assignments of error:[2]

I. The judgment of the trial court in failing to deviate from the child support obligation of the appellant, as determined by child support computation worksheets, was an abuse of discretion.

II. The judgment of the trial court in ordering the appellant to pay one-half of court costs was an abuse of discretion.

III. The judgment of the trial court, in adopting child support computation worksheets giving child support to the appellee, failed to consider the parenting time of the appellant and the incomes of the appellee and the appellant such that the appellant was entitled to child support from the appellee, which was an abuse of discretion.

IV. The failure of the trial court to issue findings of fact and conclusions of law was an abuse of discretion.

Child Support

{¶15} In his first assignment of error, Father contends that the trial court erred in failing to deviate from his child support obligation as determined by the child support computation worksheets. Father also contends, in his third assignment of error, that the trial court erred in failing to consider his increase in parenting time as well as the income disparity between Mother and Father. Father argues that his parenting time was two weekend overnights below 50 percent of parenting time before his parenting time increased to just over 50 percent. He also claims that despite his income being substantially less than Mother's, he contributed to the cost of

tuition, daycare, and school lunches prior to the support order of June 2015. Father stated that these facts should entitle him to a deviation to zero child support, and the fact that he has not received such a deviation is evidence of gender bias.

{¶16} R.C. 3119.02 governs the calculation of child support. Under this statute, a parent's child support obligation shall be calculated "in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of sections 3119.02 to 3119.24 of the Revised Code." R.C. 3119.02; *In re K.R.B.*, 2017-Ohio-7071, 95 N.E.3d 799, ¶ 13 (8th Dist.). "The amount of child support calculated pursuant to the basic child support schedule and applicable worksheet is 'rebuttably presumed to be the correct amount of child support due.'" *In re K.R.B.*, quoting R.C. 3119.03.

{¶17} R.C. 3119.22 provides that a trial court may order an amount of child support that deviates from the amount of child support that would otherwise result from the use of the basic child support schedule and the applicable worksheet if, after considering the factors and criteria set forth in R.C. 3119.23, the court determines that the amount calculated "would be unjust or inappropriate and would not be in the best interest of the child." These factors include extended parenting time or extraordinary costs associated with parenting time; disparity in income between the parties; the taxes paid by either party; significant "in-kind contributions from a parent, including * * * direct payment for lessons, sports equipment, schooling, or clothing"; and "any other relevant factor." R.C. 3119.23. If the court does, in fact, deviate from the calculated child support, it must journalize: the amount of child support; its determination that the amount "would be unjust or inappropriate and would not be in the best interest of the child"; and findings of fact supporting that determination. R.C. 3119.22; *In re K.R.B.* at ¶ 15.

---

[2] We shall address the assignments of error out of order.

**{¶18}** A juvenile court has "considerable discretion" in deciding matters related to child support. *In re K.R.B.* at ¶ 16. The decision to deviate from the actual annual child support obligation is discretionary and will not be reversed absent an abuse of discretion. *In re C.A.S. & A.S.*, 8th Dist. Cuyahoga Nos. 104052 and 104054, 2016-Ohio-5633, ¶ 16, citing *In re Custody of Harris*, 168 Ohio App.3d 1, 2006-Ohio-3649, 857 N.E.2d 1235, ¶60-61 (2d Dist.). An "abuse of discretion" occurs where the juvenile court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶19}** The issue concerning parenting time is also a matter entrusted to the discretion of the juvenile court. *Lining Qi v. Xidong Yang*, 2d Dist. Greene No. 2012-CA-24, 2012-Ohio-5542, ¶ 8. Although "extended parenting time" is not defined in R.C. 3119.23(D), it "contemplat[es] something beyond that provided in a standard visitation schedule [and] is but one factor to be considered." *Havens v. Havens*, 10th Dist. Franklin No. 11AP-708, 2012-Ohio-2867, ¶ 30. And an assertion that a parent has possession of the child more than half the time is not evidence that a support order is unjust or inappropriate. *Zbydnowski v. Zbydnowski*, 8th Dist. Cuyahoga No. 93863, 2010-Ohio-3198, ¶ 13.

**{¶20}** Upon review, an appellate court may not merely substitute its judgment for that of the trial court. *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 131, 541 N.E.2d 597 (1989). Additionally, the reviewing court should not independently review the weight of the evidence; rather, it "should be guided by the presumption that the trial court's findings are correct." *Lopez-Ruiz v. Botta*, 10th Dist. Franklin No. 10AP-610, 2011-Ohio-2414, ¶ 7, citing *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988).

**{¶21}** Here, the juvenile court granted Father's objection to the administrative order, denied his motion for child support, and granted Mother's motion for past care. In so doing, the

court considered the parties' testimony, which included statements concerning Mother's and Father's incomes, parenting time, childcare costs, tuition, and other expenses. The court noted that Mother acknowledged that CJFS listed the childcare as $8,400 in its administrative child support order when in actuality the cost was school tuition. The court stated that although no documentation was provided, Mother and Father agreed that the cost for M.W.'s summer camps were shared equally.

{¶22} Regarding M.W.'s education expenses, although the parties initially agreed that M.W. would attend parochial schools, and Father assisted with tuition costs, Father stopped paying tuition when the court ordered child support in 2015. Father indicated that upon relocating to Mayfield Heights, he stopped paying tuition because he believed that M.W. can attend the public high school in his district. Father acknowledged that he did not discuss with Mother which high school would be best for their child. Mother indicated that M.W. was accepted at St. Edward High School. The tuition is $14,000, and she would receive $3,000 for tuition assistance.

{¶23} The court also noted a dispute between Mother and Father regarding whether the couple resided together. The court found Father's testimony that the parents resided together not credible, noting that Father testified he had his son "4-5 [times] per week when he was born, but if the parties resided together, the response should have been very different." Mother explained that Father's gas bill was in Mother's name for approximately eight months and only because Father was not working at the time and Mother was financially assisting Father.

{¶24} The court considered Mother's testimony that she would often complain to Father that he was not paying support, and she ultimately filed for child support due to an increase in tuition and the basic needs of the child. Mother provided that when she would request child

support, Father would retaliate and not exercise parenting time with the child. Mother further stated that there was no consistency for financial assistance from Father. Mother also paid the costs of unreimbursed medical expenses, which amounted to approximately $5,000.

{¶25} Regarding parenting time, the court stated that the parties' testimony and court records indicate that on November 2, 2013, the parents agreed to a parenting schedule. On November 19, 2015, the parties also agreed to modify the parenting schedule. This modification extended Father's parenting time to overnights on Father's Sundays.

{¶26} The court also noted Father's testimony concerning his mortgage payments. He indicated that he pays both mortgages — his home and his rental property — in cash or check, but he does not have receipts. Father testified that his paychecks are deposited with his mother. The court stated, however, that Mother's counsel introduced evidence indicating the bank account is solely in Father's name.

{¶27} The court referenced Father's exhibits, which included W-2's from 2011 through 2015; Father's statement of 2016 income as $57,000; lease agreement for his rental property, indicating a lease of approximately $450 per month; a mortgage statement that indicates $708 payment per month; and family photographs. The court also referenced Mother's exhibits, which included IRS transcripts from 2007 to 2013; W-2's from 2011 through 2016; tuition payments; tuition statements from two parochial schools; and the October 2015 deposition of Father. The court noted that Father had not provided W-2's for 2003 through 2010, despite Mother's counsel's request.

{¶28} The court also considered Mother's testimony regarding the 2015 hearing on child support. Father did not attend the support hearing, nor did he phone the hearing officer.

**{¶29}** In its decision, the court determined that the administrative child support order misstated the parties' income and childcare. It noted that the childcare was incorrectly listed as $8,480 when that amount is actually tuition for the child's private education.

**{¶30}** The court also granted Mother's motion for past care, in part. Mother requested past care child support from the time of the child's birth until June 2015. However, the court noted that although the parties submitted testimony and evidence of income from 2011, "[t]here were [only] vague references to the Father's and Mother's employment prior to 2011, [and] the court declines to speculate as to income from the birth of the child until 2011." The court then reviewed the parties' 2011 through 2016 income as submitted at trial. It concluded that "[t]here was no evidence presented in court that the Father paid for the minor child's medical insurance, merely an attachment to the Father's closing argument." The court therefore "decline[d] to credit the Father with providing healthcare coverage for the years 2011-2012." The court also noted that there was no evidence that the minor child received public assistance from 2011 to 2016. The court then calculated the correct monthly child support obligation for each of those years.

**{¶31}** The court specifically noted that based upon documents submitted, CJFS should have assigned $60,300 income to Father and $106,851 income to Mother from June 25, 2015 until November 19, 2015. And based upon the child support guidelines, the court also determined that Father's current and future monthly child support obligation for 2016 is $477.13.

**{¶32}** In addressing Father's request for a deviation, the court stated as follows:

> During direct examination, the Father clearly stated that the funds that he provided to the Mother was for tuition, after school, and/or lunches. Until recently, the parents agreed that the minor child would attend a private school since neither resided in an acceptable school district. Neither the Mother nor the Father testified that funds were as and for child support, therefore, the court finds that the

Father shall not receive credit for the $200 tuition payments provided to the Mother from 2011 to the present day. The Father did not provide verification of payments or receipts for payments made to Mother. The testimony was vague and based on school years, whereas the Father provided $200 for approximately six (6) months in 2012; ten (10) months in 2013; and it is unclear the number of months in 2014. The court may not speculate as to dates and amounts without corroboration or verification.

The Father testified that the purpose of moving to Mayfield Heights was for the minor child to attend public school, though it is clear that the Father unilaterally relocated without discussion with the Mother as to which high school the minor child should attend. Although the parents entered into a parenting plan which increased the Father's parenting time, the Mother remains the sole legal custodian and residential parent for school purposes, [and] therefore is entitled to choose the scope and type of education for the minor child.

The court finds that the tax return as well as the testimony of the Father's income is suspect. Although ordered to produce all tax returns for the years in question, the Father produced only one (1) income tax return from the year 2015. The Father testified that the return was prepared by an accountant, though was sloppily handwritten and was not signed by a preparer. The Father provided W-2 forms from 2011-2016, no other documentation was provided to the court.

Moreover, the Mother testified that Father has not contributed unreimbursed medical costs and she has been solely responsible for the minor child's medical needs, including the cost of orthodontia care, which is approximately $4,000. The court finds that any unreimbursed medical and/or healthcare needs shall be divided pursuant to Line 16 of the [child support guidelines worksheet], 33% Father and 67% Mother.

{¶33} In considering Father's request for deviation from the monthly child support obligation, the court also reiterated the parties' original parenting plan and noted the plan modification that extended Father's parenting time two additional overnights. The court determined that due to this extended parenting time, a deviation from Father's monthly child support obligation is in the best interest of the minor child.

**{¶34}** The juvenile court outlined the deviation factors set forth in R.C. 3119.23 and noted that it considered such factors in reaching its decision:

(A) Special and unusual needs of the children; *not applicable*;

(B) Extraordinary obligations for minor children or obligations for handicapped children who are not stepchildren and who are not offspring from the marriage or relationship that is the basis of the immediate child support determination; not applicable; *not applicable*;

(C) Other court-ordered payments; *not applicable*;

(D) Extended parenting time or extraordinary costs associated with parenting time, provided that this division does not authorize and shall not be construed as authorizing any deviation from the schedule and the applicable worksheet, through the line establishing the actual annual obligation, or any escrowing, impoundment, or withholding of child support because of a denial of or interference with a right of parenting time granted by court order; *the Father has extended parenting time and it is in the best interest of the minor child for deviation to be granted*;

(E) The obligor obtaining additional employment after a child support order is issued in order to support a second family; *not applicable*;

(F) The financial resources and the earning ability of the child; *not applicable*;

(G) Disparity in income between parties or households; *the Mother earns significantly more than the Father*;

(H) Benefits that either parent receives from remarriage or sharing living expenses with another person; *not applicable*;

(I) The amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents; *not applicable*;

(J) Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing; *not applicable*;

(K) The relative financial resources, other assets and resources, and needs of each parent; *not applicable*;

(L) The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married; *not applicable*;

(M) The physical and emotional condition and needs of the child; *not applicable*;

(N) The need and capacity of the child for an education and the educational opportunities that would have been available to the child had the circumstances requiring a court order for support not arisen; *the minor child has attended private school that requires annual tuition payments. The Mother intends to continue the private education of the minor child*;

(O) The responsibility of each parent for the support of others; *not applicable*;

(P) Any other relevant factor; *not applicable*.

**{¶35}** The court specifically noted that it considered the extended parenting time and found that based on the evidence presented, "the calculated amount of child support is unfair, unjust, inappropriate, and not in the best interest of the child." The court further stated:

> The court finds that it would be fair, just, appropriate and in the best interest of
>
> the child if a deviation were granted from the calculated amount for child support
>
> so long as the Father continues to spend considerable parenting time with the
>
> child. * * * Should the Father fail to continue to exercise parenting time as
>
> provided herein, the parties should be ordered to immediately notify CJFS in
>
> writing of the same.

**{¶36}** The court then decreased Father's monthly child support from $477.13 to $329.91, and ordered the current child support obligation to be retroactive to November 19, 2015, the date of the modified parenting plan. The court further ordered CJFS to calculate any arrearage or overpayment.

**{¶37}** Based upon the record before us, we find that the juvenile court did, in fact, grant Father a downward deviation in monthly child support. And in so doing, the court considered

the relevant statutory factors, specifically noting Father's extended parenting time, the parties' incomes, and additional expenses incurred by Mother. The court also considered the testimony and evidence presented and articulated its reasoning for each relevant factor.

**{¶38}** We therefore cannot find the juvenile court abused its discretion in denying Father's motion for child support and granting Father a downward deviation in monthly support. Father has failed to demonstrate that the juvenile court's decision was a result of gender bias.

**{¶39}** Father's first and third assignments of error are overruled.

Findings of Fact

**{¶40}** In his fourth assignment of error, Father contends that the trial court erred in failing to issue findings of fact and conclusions of law. Rather than advancing case law or identifying evidence in the record in support of his argument, Father argues in his brief on appeal that the brief itself demonstrates why he is entitled to child support based upon child support and parenting time, and "no facts or conclusions of law * * * could justify denying [him] support."

**{¶41}** Under Civ.R. 52, the purpose of findings of fact and conclusions of law is "'to aid the appellate court in reviewing the record and determining the validity of the basis of the trial court's judgment.'" *In re Adoption of Gibson*, 23 Ohio St.3d 170, 172, 492 N.E.2d 146 (1986), quoting *Werden v. Crawford*, 70 Ohio St.2d 122, 124, 435 N.E.2d 424 (1982). The findings of fact and conclusions of law therefore enable a reviewing court "'to determine the existence of assigned error.'" *Gray v. Gray*, 8th Dist. Cuyahoga No. 95532, 2011-Ohio-4091, ¶ 12, quoting *Abney v. W. Res. Mut. Cas. Co.*, 76 Ohio App.3d 424, 431, 602 N.E.2d 348 (12th Dist.1991). "If the [trial] court's ruling or opinion, together with other parts of the trial court's record, provides an adequate basis upon which an appellate court can decide the legal issues presented, there is * * * substantial compliance' with the procedural rule requiring the court to make

separate findings of fact and conclusions of law." *Id.*; *Kelly v. Northeastern Ohio Univ. College*, 10th Dist. Franklin No. 07AP-945, 2008-Ohio-4893, ¶ 33 (reiterating that a trial court's decision that recites various facts and legal conclusions satisfies the requirements of Civ.R. 52, where, when considered together with other parts of the record, it formed an adequate basis upon which to decide the legal issues on appeal).

{¶42} Here, the trial court issued a lengthy decision that outlined the trial testimony of both Mother and Father. The court made certain findings based upon the evidence presented at trial, including the parties' testimony, the exhibits provided, and the child support guidelines. The findings concerned the parties' incomes, errors in the administrative child support worksheet, and the parenting schedule. The court also noted that it considered the R.C. 3119.23 deviation factors and it included its conclusions of law within its decision. The trial court's detailed decision, along with the trial transcripts and the parties 9(C) statement of evidence, contain a sufficient review of the pertinent facts and statements of law, thus providing an adequate basis upon which this court can decide the issues presented.

{¶43} Father's assignment of error concerning findings of fact and conclusions of law is overruled.

## Court Costs

{¶44} In his second assignment of error, Father contends that the trial court erred in ordering him to pay one-half court costs. In support, Father states in his brief on appeal that assessing costs against him "goes beyond unreasonable and unconscionable" and there is no "issue of fault" that would mandate such costs.

{¶45} Civ.R. 54(D) permits a trial court to award a prevailing party the costs of litigating that party's claim, stating that "[e]xcept when express provision therefor is made either in a

statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs." This rule gives a trial court broad discretion in assessing costs, and a reviewing court will not reverse the trial court's decision absent an abuse of that discretion. *Strauss v. Strauss*, 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, ¶ 79, citing *D'Hue v. D'Hue*, 8th Dist. Cuyahoga No. 81017, 2002-Ohio-5857, ¶119; *see Vance v. Roedersheimer*, 64 Ohio St.3d 552, 555, 597 N.E.2d 153 (1992) (the Ohio Supreme Court interpreting the phrase "unless the court otherwise directs" to grant the trial court discretion to order the prevailing party bear all or part of his or her own costs).

{¶46} Here, the juvenile court ruled, to some extent, in favor of each party's respective motions. It awarded Father a downward deviation of child support, and it granted Mother's motion for past care child support. Although neither Father nor Mother received exactly what they requested, the court granted their motions in part. And because both parties received a judgment, to some extent, in their favor, they were each a prevailing party. The trial court therefore did not abuse its discretion in allocating one-half of the court costs to Father. *Foster v. Idegy, Inc.*, 10th Dist. Franklin No. 13AP-948, 2014-Ohio-3015, ¶ 1 (finding a trial court does not commit an abuse of discretion in allocating court costs evenly between two prevailing parties); *see also Capeheart v. O'Brien*, 1st Dist. Hamilton No. C-040223, 2005-Ohio-3033; *Joseph v. Suttle*, 4th Dist. Meigs No. 446, 1992 Ohio App. LEXIS 529 (Feb. 10, 1992).

{¶47} Father's assignment of error concerning court costs is overruled.

{¶48} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the juvenile court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
TIM McCORMACK, JUDGE

EILEEN A. GALLAGHER, A.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR